IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELBERT BENNETT III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: 2:15cv416-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.      INTRODUCTION

Elbert Bennett, III, ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq.*, and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*, on January 8, 2014. His applications were denied at the initial administrative level on March 28, 2014. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision finding that Plaintiff had not been under a disability as defined in the Social Security Act, from March 31, 2012, through the date for his decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See*

---

[1]   Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff appealed the ALJ's decision to the Appeals Council and his request for review was denied on May 22, 2015. The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 8).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant

---

[3]    *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

can perform.  *Id.* at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

[4]  *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

At the time of the ALJ hearing, Plaintiff was thirty-eight years old and had completed high school.  Tr. 40, 41.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since March 31, 2012, the alleged onset date[.]"  Tr. 19.  At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative disc disease, obesity, and hypertension."  Tr. 19.  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  Tr. 21-22.  Next, the ALJ articulated Plaintiff's RFC as follows:

> [T]he claimant has the residual functional capacity to perform a range of "sedentary work," as that term is otherwise defined in 20 CFR 404.1567(a) and 416.967(a).  Specifically, the claimant can lift and carry up to 10 pounds occasionally and less [than] 10 pounds frequently.  He can push and pull within those same exertional limits.  He can stand or walk about 2 hours and can sit for at least 6 hours out of an 8-hour workday, but would need the opportunity to alternate between sitting and standing postures on approximately a 15-20 minute basis.  He can occasionally stoop, crouch, kneel, crawl, and climb – but not ladders, ropes, or scaffolding.  He can reach overhead on an occasional basis.  He can perform tasks not involving exposure to temperature extremes or workplace hazards such as unprotected heights and dangerous moving machinery.  He can perform tasks not

5

involving operation of vibrating tools or equipment.  He can perform tasks not involving exposure to temperature extremes.

Tr. 22.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff is "unable to perform any past relevant work[.]"  Tr. 28.  Finally, at Step Five, and based upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]"  Tr. 29. The ALJ identified several representative occupations, including "Order Clerk," "Sorter," and "Table Worker."  Tr. 29.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from March 31, 2012, through the date of this decision[.]"  Tr. 30.

## IV.  PLAINTIFF'S CLAIM

Plaintiff presents three arguments for reversal of the Commissioner's decision: (1) "[t]he ALJ erred when he found the Plaintiff limited to less than a full range of sedentary work but cited jobs requiring the full range of sedentary work"; (2) [t]he ALJ erred in not finding that the Plaintiff meets or equals the Listing of 1.04 – Disorders of the Spine"; and (3) "[t]he ALJ erred in giving greater weight to treating physicians for the workers compensation insurance company than to claimant's personal treating physician."  Pl.'s Br. (Doc. 11) at 3.

## V.    DISCUSSION

First, Plaintiff argues that the ALJ erred in determining Plaintiff was not disabled when "he found Plaintiff limited to less than a full range of sedentary work but cited jobs requiring the full range of sedentary work."  Pl.'s Br. (Doc. 11) 3-6.  Plaintiff asserts that the testimony of the VE supported the conclusion that there were no jobs in the economy for someone with Plaintiff's limitations.  However, Plaintiff's position misinterprets the VE's testimony and subsequently the ALJ's determination that Plaintiff is not disabled.

In articulating Plaintiff's residual functional capacity ("RFC") at Step Three, the ALJ limited Plaintiff to less than a full range of sedentary work.  In addition to the traditional, sedentary physical exertion limitations, as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a),[5] the ALJ restricted Plaintiff to the following additional limitations:

> [Plaintiff] can occasionally stoop, crouch, kneel, crawl, and climb – but not ladders, ropes, or scaffolding.  He can reach overhead on an occasional basis. He can perform tasks not involving exposure to temperature extremes or workplace hazards such as unprotected heights and dangerous moving machinery.  He can perform tasks not involving operation of vibrating tools or equipment.  He can perform tasks not involving exposure to temperature extremes.

---

[5] The Social Security Act defines sedentary work as the following:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a).

Tr. 22.  At Steps Four and Five, the ALJ determined that Plaintiff could not perform any past relevant work based upon those limitations, but that there were jobs in the national economy that Plaintiff could perform.  Tr. 28, 29.  Specifically, the ALJ determined that Plaintiff could perform the jobs of "order clerk," "sorter," and "table worker."  Tr. 29.

In making that determination, the ALJ relied upon the testimony of a VE.  At the hearing, the ALJ posed three hypotheticals to the VE.  Tr. 56-59.  The first hypothetical asked the VE to consider an individual, with Plaintiff's age, education, and work experience, who could lift and carry up to 20 pounds occasionally and 10 pounds frequently.[6]  Tr. 56.  In addition, the ALJ required these further limitations:

> This person could stand or walk about six hours and could sit for at least six hours out of an eight-hour workday but would need the opportunity to alternate between sitting and standing postures on a[n] approximately 15 to 20 minute basis.  This person could occasionally stoop, crouch, kneel, crawl, and climb but not ladders, ropes, or scaffolding.  This person could occasionally reach overhead.  This person could perform tasks not involving exposure to temperature extremes or exposure to workplace hazards such as unprotected heights and dangerous moving machinery.  This person could perform tasks not involving operation of vibrating tools or equipment.

Tr. 56-57.  The second hypothetical asked the VE to consider an individual "limited to the sedentary exertional level, lifting and carrying up to 10 pounds occasionally, [and] less than 10 pounds frequently," with "all other aspects of the first hypothetical remaining in place."  Tr. 57-58.  The third hypothetical asked the VE to consider an individual who

---

[6] Lifting and carrying up to twenty pounds occasionally and ten pounds frequently essentially incorporates the physical exertion requirements for "light work," as defined by 20 C.F.R. § 404.1567(b) and § 416.967(b).

could lift "up to five pounds occasionally but no weights on a frequent basis," "could occasionally stoop, could frequently perform fine and gross manipulation, [and] would occasionally need to elevate his or her leg or legs to waist level or higher."  Tr. 58-59. Based on each of the aforementioned hypotheticals, the ALJ asked the VE if there were any jobs in the national economy that such an individual could perform.  Tr. 56-59.

In response to the first hypothetical, the VE stated that such an individual could perform the jobs of "garment folder," "inspector," and "tagger." Tr. 57.  In response to the second hypothetical, the VE stated that such an individual could perform the jobs of "order clerk," "sorter," and "table worker." Tr. 58.  In response to the third hypothetical, the VE stated that such an individual "would not be able to maintain full-time, competitive employment at any skill or exertional level being limited to . . . less than a full range of sedentary work." Tr. 59.

Plaintiff argues that the ALJ erred in finding that Plaintiff was not disabled because "[p]ursuant to the vocational expert in this case, Plaintiff would be limited to jobs of less than a full range of sedentary; however, the ALJ cited jobs which required the full-range of sedentary in holding that the Plaintiff was not disabled."  Pl.'s Br. (Doc. 11) at 4. Plaintiff's argument ignores that the second hypothetical posed to the VE – which formed the basis for the VE's conclusion that such an individual could perform the work of an order clerk, sorter, or table worker – required a physical exertion level less than the full-

range of sedentary because it incorporated the additional limitations from the first hypothetical posed.  Indeed, in posing his second hypothetical, the ALJ stated:

> Let us say that the hypothetical individual just described [in the first hypothetical] [was] to be limited to the sedentary exertional level, lifting and carrying up to 10 pounds occasionally, less than 10 pounds frequently, pushing and pulling within those same limits and standing or walking about two hours, sitting for at least six hours.  *And all other aspects of that first hypothetical remaining in place*.

Tr. 58 (emphasis added).  Thus, the ALJ's second hypothetical incorporated the additional limitations set forth in the first hypothetical, and did not, as Plaintiff argues, extend to the "full range of sedentary."  Based upon that second hypothetical, the VE stated that Plaintiff could perform the jobs of order clerk, sorter, and table worker, which were the occupations that the ALJ cited in Step Five.  Therefore, the ALJ did not cite jobs requiring a full range of sedentary work after limiting Plaintiff to less than a full range of sedentary.  As such, Plaintiff's argument is without merit.

Second, Plaintiff argues that the ALJ erred by determining that Plaintiff failed to meet or medically equal Listing 1.04(C).  Pl.'s Br. (Doc. 11) at 6.  The court concludes that substantial evidence supports the ALJ's determination that Plaintiff did not meet or medically equal Listing 1.04(C); thus, Plaintiff's argument fails.

"For a claimant to show that his impairment matches a listing, [the impairment] must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) (emphasis in original).  Listing 1.04(C) provides:

10

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . . C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.  In § 1.00B2b, the Regulations define an inability to

ambulate effectively as:

(1) [A]n *extreme* limitation of the ability to walk; i.e., an impairment(s) that interferes *very seriously* with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. *Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.* The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § 404 Subpart P, App. 1 (emphasis added).

11

Here, substantial evidence supports the ALJ's conclusion that Plaintiff did not meet

or medically equal Listing 1.04(C).[7]  As set forth above, Listing 1.04(C) requires Plaintiff

to have a spine disorder with "[l]umbar spinal stenosis . . . *resulting in the inability to*

*ambulate effectively*."  20 C.F.R. § 404 Subpart P, App. 1. (emphasis added).  While there

is some evidence that Plaintiff may have had difficulty walking,[8] none of that evidence

points to an inability to ambulate effectively, as defined in § 1.00B2b.  Instead, substantial

evidence exists to the contrary, indicating that Plaintiff could ambulate effectively.

Specifically, the ALJ points to Plaintiff's treating physician, Dr. Brad Katz ("Dr. Katz"),

---

[7] Although the ALJ failed to explicitly state at Step Three that Plaintiff did not meet Listing 1.04(C), the court concludes that the ALJ did consider whether Plaintiff met or medically equaled Listing 1.04(C), and that substantial evidence supports his implicit determination that Plaintiff failed to meet the listing.  If an ALJ fails to explicitly state whether a plaintiff meets or medically equals a listing, such a determination may be implicit in the ALJ's decision.  *See Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (while the ALJ did not explicitly state that [the plaintiff's] impairments were not contained in the listings, such a determination was implicit in the ALJ's decision); *Edwards v. Heckler*, 736 F.2d 625, 629 (11th Cir. 1984) (there may be an implied finding that a claimant does not meet a listing).  Failure to explicitly state whether a claimant meets or medically equals a particular listing by itself is not fatal to an ALJ's decision. *See Jackson ex rel. K.J. v. Astrue*, 734 F. Supp. 2d 1343 n. 17 (N.D. Ga. 2010) (citing *Tuberville ex rel. Rowell v. Astrue*, 316 F. App'x 891, 893 (holding that "though the ALJ did not explicitly discuss why [the plaintiff] did not actually meet Listing 112.05[,] substantial record evidence supports that [the plaintiff's] condition did not actually meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that [the plaintiff] was not disabled" pursuant to the listing).  Indeed, when substantial evidence exists to support the ALJ's ultimate conclusion that a claimant does not meet a listing, the Commissioner's decision must be upheld.  *Tuberville*, 316 F. App'x at 893.

[8] Plaintiff points to a consultative exam and his own testimony before the ALJ as evidence of his inability to ambulate.  With regards to the consultative exam, Plaintiff cites the report of Dr. Celtin Robertson ("Dr. Robertson"), which indicates that Plaintiff's gait was normal, but cautious, and that Plaintiff walked slowly "due to fear of exaction [sic] of back pain."  Pl.'s Br. (Doc. 11) at 7; Tr. 403.  While Plaintiff asserts that the same consultative exam also indicated that "Plaintiff had the inability to ambulate and was limited in standing," the court notes that the report only suggests difficulty – not inability – to stand and ambulate effectively.  *See* Pl.'s Br. (Doc. 11) at 7-8; Tr. 404.  Second, Plaintiff points to his own testimony that he "sometimes uses a cane."  Pl.'s Br. (Doc. 11) at 8; Tr. 44.  However, nowhere in the record does it indicate that Plaintiff uses two canes or even that he uses one cane for a significant amount of time.  As such, Plaintiff's evidence does not indicate that he has an inability to ambulate effectively.

who observed that Plaintiff "had a normal examination with fine motor movements"; had

a normal gait; had no ataxia or unsteadiness; had normal tandem walking; and had normal

heel and toe walking.  Tr. 24.  The ALJ also points to Plaintiff's admission that he "was

able to walk ½ to 2 miles with back pain."  Tr. 23.  Additionally, the ALJ notes that

Plaintiff's treating physician, Dr. Christopher Heck ("Dr. Heck"), did not "see a cause" for

Plaintiff's pain, and that Plaintiff's "disk herniation does not correlate with his location of

pain."  Tr. 27.  Further, the ALJ notes that "[d]espite [Plaintiff's] allegations of disability,

he did not allege disability until he was laid off from work in March 2012[.]"[9]  Tr. 27.

Considering the record as a whole, the court concludes that substantial evidence supports

the ALJ's decision that Plaintiff did not meet or medically equal Listing 1.04(C) since the

evidence does not indicate that Plaintiff has an inability to ambulate effectively as defined

in § 1.00B2b.

Finally, Plaintiff argues that the ALJ erred in giving greater weight to the workers

compensation treating physicians than to Plaintiff's personal treating physician.  In support

of that argument, Plaintiff asserts that the workers compensation physicians were biased.

Specifically, Plaintiff states:

> the workers compensation physicians' opinions are similar with each other
> while the personal treating physician's opinion stands alone for disagreeing
> with the majority opinion.  It is not coincidental that the physicians who rely
> on the workers compensation insurance company for patients should find that

---

[9] The ALJ notes that "[Plaintiff] testified that he returned to work after his injury, but he was not [really] performing his [ ] job.  In fact, [Plaintiff] stated he was doing 'nothing' at work, though there is no documentation of his actual work duties."  Tr. 27.

the Plaintiff is able to work in some capacity.  If the results are in the best
interest of the insurance company and employer, then the physicians would
likely want to remain on the list of treating physicians or receive referrals
from those treating physicians. . . . The ALJ did not give the appropriate
weight to the Plaintiff's personal treating physician, which was more in line
with the MRI results and pain symptoms than the 'hired guns' of the workers
compensation insurance company.

Pl.'s Br. (Doc. 11) at 10.

Plaintiff's argument of bias related to a treating physician's employment finds no

basis in the Social Security Act.  Indeed, the Social Security regulations do not distinguish

between treating physicians based on the source of their income.  *See* 20. C.F.R. §§

404.1527(c), 416.927(c).  Further, Plaintiff has provided no actual evidence of bias from

the workers compensation physicians other than his bare assertions that their opinions were

prejudiced because they were "hired guns."  *See* Pl.'s Br. (Doc. 11) at 10.  Without much

more, the court cannot conclude that the ALJ improperly considered the opinions of the

workers compensation treating physicians (and not Plaintiff's personal treating physician)

simply because the workers compensation physicians contradict Plaintiff's ultimate claim

of disability.

To the extent that Plaintiff is arguing that the ALJ improperly discounted Plaintiff's

personal treating physician's opinion – regardless of bias – the court concludes that

substantial evidence exists to support the ALJ's decision to discount that opinion.  The

opinion of a treating physician "must be given substantial or considerable weight unless

'good cause' is shown to the contrary."  *Lewis v. Callahan*, 125 F. 3d 1436, 1440 (11th

14

Cir. 1997) (citing *McGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).   The Eleventh Circuit has found that "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440). When electing to disregard the opinion of a treating physician, an ALJ must clearly articulate his or her reasons for discounting the opinion. *Id.*

Here, good cause exists for discounting the opinion of Plaintiff's personal treating physician, Dr. Frank Gogan ("Dr. Gogan").  First, the ALJ points to the conclusory nature of Dr. Gogan's records, noting a lack of "significant clinical findings regarding the basis for [Plaintiff's] physical limitations" found in Dr. Gogan's physical examinations.  Tr. 25.  The ALJ further states that "it appears that Dr. Gogan's assessment of [Plaintiff's] condition was heavily reliant on the claimant's self-report."  Tr. 25.  Second, the ALJ cites inconsistencies with Dr. Gogan's findings and the record as a whole.[10]  Tr. 26.

---

[10] Although the ALJ did not explicitly state that Dr. Gogan's opinion was inconsistent with the record, it is clear to the court that he made that determination.  In his discussion comparing Dr. Gogan's opinion with Dr. Robertson's opinion, the ALJ notes that the evidence as a whole "is largely consistent with the findings of Dr. Robertson."  Tr. 26.  Previously, in the same paragraph, the ALJ states that "Dr. Robertson's opinion is inconsistent with Dr. Gogan's opinions, as [Dr. Robertson] finds [Plaintiff] to have greater functional capacity."  Tr. 26.  Therefore, since the ALJ determined that Dr. Robertson's opinion was consistent with the medical record as a whole and that Dr. Gogan's opinion was inconsistent with Dr. Robertson's, it follows that the ALJ found Dr. Gogan's opinion to be inconsistent with the record.

With regards to discounting a treating physician's opinion as conclusory, good cause may arise where a report "is not accompanied by objective medical evidence or is wholly conclusory." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1159 (11th Cir. 2004) (citation and internal quotations omitted). Here, the evidence of record from Dr. Gogan, who is a pain management specialist, contains few – if any – objective medical findings to support his conclusion that Plaintiff is totally disabled. Dr. Gogan completed a Medical Source Statement in May 2013. Tr. 359-362. At that time, Dr. Gogan had seen Plaintiff on three occasions. Tr. 357, 358, and 399. On the first occasion, Dr. Gogan's handwritten notes state the nature of Plaintiff's injury and Plaintiff's resulting restrictions, as described by Plaintiff. Tr. 358. In that record, there is no objective medical evidence regarding the severity of Plaintiff's condition. On the second occasion, Dr. Gogan's notes provide only prescription medications that were presumably prescribed to Plaintiff. Tr. 357. Again, that record contains no objective medical evidence regarding the severity of Plaintiff's condition. On the third occasion, Dr. Gogan's notes state that Plaintiff had 30-degree lumbar flexion, and straight leg raising at 40 degrees, and that Plaintiff was to consult with Dr. Pat Ryan, a spine surgeon, in June. Tr. 399. The notes from that visit also state "see enclosed sheets," which were not included in the evidence before the ALJ. Tr. 399; Pl.'s Br. (Doc. 11) at 9. As it is Plaintiff's burden to prove disability, neither the ALJ nor this court are required to speculate what objective evidence those records contain.[11]

---

[11] The court notes that the ALJ did not err by failing to recontact Dr. Gogan for the missing records.

*See* 42 U.S.C. §§ 405(g), 423(d)(2)(A) (the burden rests on a claimant for social security disability benefits to produce sufficient evidence, medical or otherwise, to establish his disability).  Without more, the ALJ had good cause to discount Dr. Gogan's May 2013 finding of total disability based upon the scant medical record supporting his conclusion.

In May 2014, Dr. Gogan once again concluded that Plaintiff was unable to work and that it was unknown when he would be able to return to work.[12]  Tr. 406.  Presumably, Dr. Gogan's assessment was based upon five additional encounters with Plaintiff.  Tr. 396, 397, 398, 418, and 419.  None of those assessments provide objective medical evidence to support Dr. Gogan's conclusion that Plaintiff is totally disabled.  *See* Tr. 396, 397, 398,

---

*See Osborn v. Barnhart*, 194 F. App'x 654, 669 (11th Cir. 2006) (holding that the ALJ did not have a duty to obtain records from a medical source considering that the Commissioner requested "all" medical records from the treating hospital, that the ALJ specifically asked the claimant whether he wished to add anything to the record, and that substantial evidence supported the ALJ's determination that the claimant was not disabled).  As discussed above, substantial evidence, including opinions by other treating physicians, supports the ALJ's determination that Plaintiff was not disabled.  Further, the ALJ asked Plaintiff, who was represented by counsel, at the beginning of the hearing if he had the opportunity to review Exhibits 1A-18F.  Tr. 38.  Plaintiff's attorney affirmed that she had reviewed the records, and that she had no objections. Tr. 38.  Under these circumstances, the court cannot say, and Plaintiff does not argue, that the ALJ failed in his duty to fully and fairly develop the medical record by not contacting Dr. Gogan for the missing records.

[12] Dr. Gogan provided a medical opinion to the Elmore County Circuit Court as part of a child support hearing involving Plaintiff.  Dr. Gogan's assessment that Plaintiff was not able to work was dated April 20, 2014.  Tr. 406.  However, it is apparent from the record that the information was requested from Dr. Gogan on May 12, 2014.  Tr. 406.  Because it is nonsensical to conclude that Dr. Gogan would have responded to the Elmore County Circuit Court *prior* to being asked for information, the court concludes that Dr. Gogan simply misdated his assessment April 20th instead of May 20th.  Reaching this conclusion allows the court to consider one additional patient encounter, dated May 20, 2014, between Dr. Gogan and Plaintiff for the purposes of reviewing the evidence considered by Dr. Gogan in reaching his conclusion of disability.

418, and 419.  Indeed, the overwhelming majority of the notes provided by Dr. Gogan reflecting those encounters simply recount Plaintiff's diagnoses and his prescription medication therapies.  *See* Tr. 396, 397, 398, 418, and 419.  As such, the ALJ had good cause to discount Dr. Gogan's medical opinion of total disability based upon the scant medical records supporting such an opinion.[13]

Even if the ALJ did not have good cause to discount Dr. Gogan's opinion based on the conclusory nature of the evidence supporting his disability determination, good cause exists to discount his opinion because it is inconsistent with the other treating physicians and with the record as a whole.  Good cause may arise to discount a treating physician's opinion where the opinion is contradicted by objective medical evidence or by a claimant's own description of his daily activities.  *See Ellison v. Barnhart*, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (stating that an ALJ may devalue the opinion of a treating physician where the opinion is contradicted by objective medical evidence); *Carson v. Comm'r of Soc. Sec. Admin.*, 300 F. App'x 741, 743 (11th Cir. 2008) (concluding that substantial evidence supported the ALJ's decision to discount the opinion of a treating physician due, in part, to the claimant's own contradictory statements).  Here, the ALJ found such good cause to discount Dr. Gogan's opinion.  First, the ALJ points to the contradictory reports of

---

[13] Additional medical records from Dr. Gogan provide similarly conclusory information.  *See* Tr. 416, 417.  In the record dated October 24, 2014, Dr. Gogan does provide some objective evidence by noting that Plaintiff had twenty-degree lumbar flexion and leg raising at forty degrees.  Tr. 416. However, the remainder of those records once again provide general information concerning Plaintiff's diagnoses and medications.  *See* Tr. 416, 417.

Plaintiff's treating physician, Dr. Heck.  Specifically, the ALJ noted that, despite Plaintiff's complaints of back pain, Dr. Heck found that Plaintiff's "disk herniation does not correlate with his location of pain."  Tr. 24.  (emphasis in original).  Further, the ALJ noted that Dr. Heck found normal Plaintiff's musculoskeletal examination, bulk and tone, tandem walking, gait, and heel and toe walking.  Tr. 27.  In addition to Dr. Heck's opinion, the ALJ points to Dr. Jeffrey Pirofsky's findings, who was also considered a treating physician of Plaintiff.  Despite Plaintiff's contentions that he could not work, Dr. Pirofsky assigned Plaintiff a seven percent impairment rating to the body as a whole, and released Plaintiff to work without restriction.  Tr. 27; Tr. 179.  Further contradictory evidence was provided by Plaintiff himself.  The ALJ points to Plaintiff's admission that he could walk one-half to two miles with back pain.  Tr. 27.  He also notes that, although Plaintiff now contends that he is unable to work due to the severity of his back pain, Plaintiff returned to work for approximately six months after his injury and filed for disability only after he was laid off, raising suspicion as to the severity of Plaintiff's pain.[14]  Tr. 27.  Because the ALJ pointed to multiple inconsistencies between Dr. Gogan's opinion and the record as a whole, sufficient evidence exists supporting the ALJ's decision to discount Dr. Gogan's opinion.

---

[14] As previously noted, the ALJ considered Plaintiff's testimony that he was "not [really] performing his [ ] job" and was doing "nothing" at work, although he provided no documentation to support that claim.  Tr. 27.

19

For the foregoing reasons, the court finds that substantial evidence exists to support the ALJ's determination that Plaintiff is not disabled.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.  A separate judgment will issue.

Done this 2nd day of May, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE